UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| URBAN 8 DANVILLE CORPORATION, | ) | |
| an Illinois corporation, and URBAN 8 MACOMB | ) | |
| CORPORATION, an Illinois corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| NATIONWIDE AFFORDABLE HOUSING | ) | Jury Trial Demanded |
| FUND 4, LLC, an Ohio limited liability company, | ) | |
| SCDC, LLC, an Ohio limited liability company, | ) | |
| and WENTWOOD CAPITAL ADVISORS, LP, | ) | |
| a Texas limited partnership, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Urban 8 Danville Corporation ("Danville General Partner") and Urban 8 Macomb Corporation ("Macomb General Partner") (collectively, Danville General Partner and Macomb General Partner are referred to as "General Partners"), for their Complaint against Defendants Nationwide Affordable Housing Fund 4, LLC as successor to Provident Tax Credit Fund IX, LLC ("Investor Limited Partner" or "ILP"), SCDC, LLC, an Ohio limited liability company ("Special Limited Partner" or "SLP") (collectively, the ILP and SLP are referred to as "Limited Partners"), and Wentwood Capital Advisors, LP ("Wentwood") state and allege as follows:

## INTRODUCTION

1. In 2000, Urban Danville Limited Partnership (the "Danville Partnership") was formed for the purpose of acquiring, rehabilitating, developing, owning, and operating a 160-unit affordable housing development, known as Vermilion House Apartments (the "Danville Project").

1

2.      The Danville Project is located in Danville, which is in Vermilion County, Illinois, and provides housing for low-income elderly residents under both a restrictive covenant with the State of Illinois and a federal Housing Assistance Payment ("HAP") contract.

3.      The Danville General Partner, Urban 8 Limited Partnership (the "Class A LP"), SLP, and a predecessor to the ILP executed an Agreement of Limited Partnership (the "Danville Partnership Agreement"), dated as of August 15, 2003, providing for the operation of the Danville Partnership.  On information and belief, a true and correct copy of the Danville Partnership Agreement, exclusive of its exhibits, is attached hereto as **Exhibit A**.  Because the copy of the Danville Partnership Agreement attached hereto does not include its referenced Exhibit 2: Financial Forecast, on information and belief, a true and correct copy of the financial forecast for the Danville Partnership that was appended to the Danville Partnership Agreement is attached hereto as **Exhibit A-1**.

4.      Urban 8 Danville Corporation is the managing general partner of the Danville Partnership.  Urban 8 Limited Partnership is the Class A Limited Partner.  The Danville General Partner and Class A LP are affiliates that share common ownership.

5.      In 2000, Urban Macomb Limited Partnership (the "Macomb Partnership") was formed for the purpose of acquiring, rehabilitating, developing, owning, and operating a 115-unit affordable housing development known as Jefferson House Apartments (the "Macomb Project").

6.      The Macomb Project is located in Macomb, which is in McDonough County, Illinois, and provides housing for low-income elderly residents under both a restrictive covenant with the State of Illinois and a federal HAP contract.

7.      The Macomb General Partner, Class A LP, SLP, and a predecessor to the ILP executed an Agreement of Limited Partnership (the "Macomb Partnership Agreement"), dated as

US 164865685v1

of August 15, 2003, providing for the operation of the Macomb Partnership. On information and belief, a true and correct copy of the Macomb Partnership Agreement, exclusive of its exhibits, is attached hereto as **Exhibit B**. Because the copy of the Macomb Partnership Agreement attached hereto does not include its referenced Exhibit 2: Financial Forecast, on information and belief a true and correct copy of the financial forecast for the Macomb Partnership that was appended to the Macomb Partnership Agreement is attached hereto as **Exhibit B-1**.

8. Urban 8 Macomb Corporation is the managing general partner of the Macomb Partnership. Urban 8 Limited Partnership is the Class A Limited Partner. The Macomb General Partner and Class A LP are affiliates that share common ownership.

9. Provident Tax Credit Fund IX, LLC, was the original Investor Limited Partner of both Partnerships.

10. On information and belief, the interests of Provident Tax Credit Fund IX, LLC, and/or its successors were acquired by Nationwide Affordable Housing Fund 4, LLC, which is the current Investor Limited Partner of both Partnerships.

11. SCDC, LLC, is the Special Limited Partner of both Partnerships.

12. On information and belief, Wentwood Capital Advisors, L.P. ("Wentwood"), currently manages the ILP's interests in the Partnerships.

13. On information and belief, in 2012 an affiliate of Wentwood acquired and currently owns 100% of the equity interests in and obligations owed by the SLP.

14. For more than fifteen years, the parties to this action operated under the belief that their contracts permitted the ILP to receive numerous tax credits and other benefits, and accordingly granted the General Partners, or their assigns, an option to purchase the interests of

3

the ILP and SLP in the Partnerships at the conclusion of the 15-year compliance period. The General Partners have satisfied all conditions precedent and properly exercised their options.

15. Now that the ILP has received all of the tax credits, with no recapture risk, and realized the full benefit of them and the full benefit of its bargain, and now that each General Partner has duly exercised its option to purchase the Limited Partners' interests in the Partnerships, Defendants are refusing to honor the General Partners' exercise of the purchase options, breaching the Partnership Agreements, refusing to work or cooperate in good faith with the General Partners in their exercise of the purchase options, and are frustrating and preventing the General Partners' contractual rights and ability to purchase the Limited Partners' interests in the Partnerships, and are causing harm to the properties and the General Partner.

16. Because the General Partners have properly exercised their respective options to acquire the Limited Partners' interests in the Partnerships and delivered the requisite valuation reports, and because Defendants are bound to comply with the terms of the Partnership Agreements (which were drafted by the Limited Partners, or their predecessors) and cooperate in the purchase, but are refusing to do so, the General Partners bring this action seeking, among other things, to protect and enforce their rights and obtain, among other things, specific performance and damages.

## PARTIES

17. Urban 8 Danville Corporation is the General Partner of Urban Danville Limited Partnership. Urban 8 Danville Corporation's principal place of business is located at 500 Lake Cook Road, Deerfield, IL 60015.

18. Urban 8 Macomb Corporation is the General Partner of Urban Macomb Limited Partnership. Urban 8 Macomb Corporation's principal place of business is located at 500 Lake Cook Road, Deerfield, IL 60015.

US 164865685v1

19.     Urban 8 Limited Partnership is the Class A Limited Partner of both the Urban Danville Limited Partnership and the Urban Macomb Limited Partnership.  Urban 8 Limited Partnership's principal place of business is located at 500 Lake Cook Road, Deerfield, IL 60015.

20.     Nationwide Affordable Housing Fund 4, LLC, is the current and successor Investor Limited Partner of both Partnerships.  Nationwide Affordable Housing Fund 4, LLC, is an Ohio limited liability company, whose principal place of business is located at 515 South Capital of Texas Highway, Suite 103, Austin, Texas 78746.

21.     On information and belief, Nationwide Affordable Housing Fund 4, LLC's managing member is Wentwood ORC Advisors, LLC, an Ohio limited liability company and an affiliate of Wentwood Capital Advisors, LP, whose principal place of business is located at 515 South Capital of Texas Highway, Suite 103, Austin, Texas 78746.

22.     On information and belief, Wentwood ORC Advisors, LLC, is wholly owned by an Ohio limited liability company with its principal place of business in Texas, that is, in turn, owned by: (a) a Texas corporation with its principal place of business in Texas; (b) a limited liability company entirely owned by individuals who are citizens of Texas and Ohio, and a Texas corporation with its principal place of business in Texas; (c) a Texas limited partnership that is owned by another Texas limited partnership, the partners of which are individuals residing in Texas; and (d) a Texas limited partnership, which is owned by two Texas limited liability companies (which are owned by another Texas limited liability company, that is owned by a Texas trust, which is controlled by trustees who are individuals residing in Texas), a Texas limited partnership (whose sole partner is a Texas trust, which is controlled by trustees who are individuals residing in Texas), and two Texas trusts, which are controlled by trustees who are individuals residing in Texas.

5

23. On information and belief, Nationwide Affordable Housing Fund 4, LLC has one non-managing member, which is an Ohio limited liability company that is, in turn, owned by a Colorado corporation with its principal place of business in Colorado and an Ohio corporation with its principal place of business in Ohio.

24. SCDC, LLC, is the Special Limited Partner of both Partnerships. SCDC, LLC, is an Ohio limited liability company, whose principal place of business is located at 515 South Capital of Texas Highway, Suite 103, Austin, Texas 78746.

25. On information and belief, SCDC, LLC's sole member is Wentwood ORC Advisors, LLC, which is owned as described above in paragraph 18.

26. Urban Danville Limited Partnership is an Illinois limited partnership that was organized solely to acquire, rehabilitate, develop, improve, own, maintain, operate, manage, lease, sell, and otherwise deal with the Danville Project. The Danville Partnership's principal place of business is located at 770 Lake Cook Road, #350, Deerfield, IL 60015.

27. Urban Macomb Limited Partnership is an Illinois limited partnership that was organized solely to acquire, rehabilitate, develop, improve, own, maintain, operate, manage, lease, sell, and otherwise deal with the Macomb Project. The Macomb Partnership's principal place of business is located at 770 Lake Cook Road, #350, Deerfield, IL 60015.

28. Wentwood Capital Advisors, L.P., is a Texas limited partnership. Wentwood's principal place of business is 515 South Capital of Texas Highway, Suite 103, Austin, Texas 78746.

29. On information and belief, Wentwood's partners are: (1) two individuals residing in Texas; (2) a Texas corporation with its principal place of business in Texas; and (3) a Texas

partnership whose members are two individuals residing in Texas and a Texas corporation with its principal place of business in Texas.

30.     Wentwood provides asset management and other services to corporate investors and related companies on low-income housing tax credit equity investments, reportedly managing $7 billion in investments in 47 tax credit funds throughout the United States.

31.     Wentwood also reportedly owns and/or manages thousands of units in multifamily properties across 42 states and acts as a property management agent.

32.     Upon information and belief, Wentwood is the contractual asset manager for the Limited Partners and is the Limited Partners' agent.

## JURISDICTION, VENUE, AND CHOICE OF LAW

33.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between all Plaintiffs and all Defendants, and the amount in controversy exceeds $75,000 for each Plaintiff.

34.     Jurisdiction and venue are proper in this Court because in the Partnership Agreements, the parties agreed that any suit arising from the Partnership Agreements could be brought in the United States District Court for the Northern District of Illinois, and the parties consented to jurisdiction in this Court.

35.     This Court may exercise personal jurisdiction over Wentwood because, among other reasons, Wentwood manages the Limited Partners' interests in Projects located in Illinois, regularly communicates with Plaintiffs in Illinois, has interfered with contracts based in Illinois regarding Illinois properties and affecting Illinois residents, and has caused harm to Illinois corporations in Illinois.

36.     In addition, the Partnership Agreements shall be construed and enforced in accordance with the laws of the State of Illinois.

7

## ALLEGATIONS

### I.     The Low-Income Housing Tax Credit Program.

37.     The low-income housing tax credit ("Tax Credit") is a federal tax credit that is generated from certain multi-unit housing projects that satisfy a number of requirements, that include, but are not limited to, an agreement by the property owner to only rent certain qualified units to households with incomes below certain qualified limits at rents that do not exceed certain federally-mandated maximums for a period of at least 15 years after the Property is placed in service (the "Compliance Period").

38.     The Tax Credit program is governed by Section 42 of the Code, certain Treasury Regulations, guidance from the Treasury Department and the Internal Revenue Service, and state-specific procedures contained in various documents adopted by designated housing agencies in each state (collectively, the "Tax Credit Rules").

39.     In a typical low-income housing project, the project owner is organized as a limited partnership or limited liability company, the managing general partner owns a de minimis interest in the fee owner entity but controls the day-to-day operations of the project, and a third-party tax credit investor is admitted as an investor limited partner, agreeing to contribute capital to the owner entity in exchange for an allocation of substantially all of the Tax Credits available to the project owner and certain other expected tax benefits.

40.     The Tax Credit Rules provide that only the project owner of a qualified low-income housing project can qualify for and receive Tax Credits, and only if the project owner meets certain terms and conditions and guarantees the continuation of these requirements for the duration of the Compliance Period, or as extended.

41.     The project owner collects the Tax Credits over a ten-year period, but remains obligated to maintain the low-income rents during the fifteen-year Compliance Period.  By the end

8

of the Compliance Period, the project owner has collected all Tax Credits available to the project and other tax benefits. As a result, by the end of the Compliance Period, the investor limited partner has realized the vast majority of economic benefits it bargained for and expected from the project and further expects to exit the partnership no later than the expiration of the Compliance Period.

42.     A purchase option is often one of the primary economic incentives for the managing general partner in a typical low-income housing project.

43.     While the investor limited partner receives a substantial yearly return on its investment over ten years in the form of Tax Credits and other economic benefits, the managing general partner manages the project during the Compliance Period for fees, which are traditionally required to be deferred and paid out from project cash flows, during the Compliance Period.

44.     The managing general partner is also the guarantor of the flow of Tax Credits, any negative adjustors, and operating losses, so the managing general partner assumes significant risk in the project.

45.     The managing general partner undertakes its investment of time, resources and money, as well as its duties and obligations, with the expectation that it will have the option and right to acquire the investor limited partner's interest in the operation of the business as a going-concern or acquire the real estate itself at the end of the Compliance Period at a formulaic price.

46.     Traditionally, and in these cases, the investor limited partners does not expect, nor project, any cash payment at the exercise of the purchase option.

47.     In this case, each General Partner invested in its respective Partnership and dutifully served as the managing general partner with these aforementioned understandings and expectations.

US 164865685v1

48.     Without the purchase option, the managing general partner would have much less incentive to participate in the development of low-income housing and would be deprived of an economic right to which the investor limited partner had agreed at the project's inception.

## II.     The Projects and the Partnership Agreements.

49.     In 2000, the Partnerships were initially organized to acquire, rehabilitate, develop, improve, own, maintain, operate, manage, lease, sell and otherwise deal with the Projects.

50.     The Projects were to be acquired, developed, and operated in such a manner as to qualify for the Tax Credits.

51.     Pursuant to the Partnership Agreements, in 2003 the predecessor to Nationwide Affordable Housing Fund 4, LLC, was admitted to the Partnerships as the Investor Limited Partner and SCDC, LLC was admitted as the Special Limited Partner.  The terms of the Partnership Agreements set forth the various obligations and duties of the General Partners and Limited Partners.

52.     The Partnership Agreements include an option for the General Partners to purchase the Limited Partners' interests in the Partnerships as a going-concern following the end of the Compliance Period (the "Purchase Option").

53.     Section 6.16 of the Partnership Agreements provides, in relevant part:

> [T]he General Partners shall have the option to purchase the Interest of the Investor Limited Partner, Special Limited Partner, and any Additional Limited Partner . . . (the "Option") at any time during the period beginning with the expiration of the Compliance Period and ending on the date which is nine (9) months from the expiration of the Compliance Period (the "Option Period"), on the terms and conditions set forth in this Section 6.16.  The General Partners shall exercise the Option, if at all, by delivering to such Limited Partners at any time during the period beginning ninety (90) days prior to the expiration of the Compliance Period and ending on the expiration of the Option  Period, written notice of such exercise; such notice of exercise shall specify that the Option otherwise is exercised without condition  or  qualification,  subject  to  the  determination  of  the

10

purchase price in accordance with this Section 6.16. The purchase price for the Interest of the Limited Partners under the Option shall be equal to the cash which would be distributed to the Limited Partners (other than the Class A Limited Partner) pursuant to Section 5.2.B if the Property were then sold to a third party for "Fair Market Value" at the time of the exercise of the Option (less reasonable expenses approved by the Special Limited Partner in connection with such sale and assuming that any applicable Sale Preparation Fee is paid in accordance with Section 5.2B). The Fair Market Value shall be determined as follows: the General Partners and the Special Limited Partner shall each appoint an appraiser; the two appraisers shall then appoint a third appraiser; each of the appraisers shall determine the fair market value of the Property. The Fair Market Value shall be the average of the determinations of the three appraisers. . . . In conducting the appraisal, the appraiser shall take into account any requirements that the Property remain dedicated for the use of low-income households pursuant to any restrictions under any loan agreements and/or regulatory agreements, or otherwise, and shall take into account any tax benefits or other subsidy or financing benefits available with respect to the Property. . . .

54.     Section 6.17 of the Partnership Agreements sets forth the formula for calculating the Sale Preparation Fee. Section 6.17 states, in relevant part:

Upon any sale of the Property or any portion thereof, the Partnership shall pay a sale preparation fee to the Class A Limited Partner (the "Sale Preparation Fee"), in consideration of its services in arranging for and negotiation such sale, in an amount equal to a reasonable and customary real estate sales commission equal applicable to similar properties in the location of the Property at the time of such sale, not to exceed six percent (6%) of the gross sales price of the Property, as provided in Section 5.2B . . . The Sale Preparation Fee shall be due and payable on a one-time basis only. In addition, if the Class A Limited Partner (or an Affiliate thereof) purchases the Property, (or an interest therein pursuant to Section 6.16), the Sale Preparation Fee shall be allowed as a credit to the purchase price.

55.     Section 6.5.H of the Partnership Agreements provides a forced-sale right to the SLP that can be exercised *only if* the General Partner does not exercise its purchase option within the option period, stating: "If requested to do so by the Special Limited Partner at any time after the

expiration of the option granted in Section 6.16, the General Partners shall offer the Property for sale. . . ."

**III.    The Current Dispute.**

56.    The Compliance Period for both Projects ended on December 31, 2017.

57.    The Option Period for both Projects ended on September 30, 2018.

58.    In accordance with the Purchase Option, the General Partners timely provided the required written notice of exercise of the Purchase Option to the Limited Partners and also provided a copy of the appraisals prepared by the appraiser selected by the General Partners pursuant to Section 6.16 of the Partnership Agreements.  The General Partners also delivered notice to Wentwood that they had exercised their Purchase Options and requested that Wentwood, as agent for the Limited Partners, appoint an appraiser to provide a valuation of the Projects as required under Section 6.16.

59.    Following the General Partners' proper exercise of their respective Purchase Options, the General Partners received no response from the Limited Partners or from Wentwood as agent for the Limited Partners.

60.    On July 24, 2018, Andrew Delman, president of both General Partners, sent an e-mail to Tami Holtz, a Vice President/Asset Manager for Wentwood, stating that the General Partners had submitted their notices of exercise and appraisals of the Projects in February, but had not received any response from Wentwood.  A true and correct copy of Mr. Delman's July 24, 2018 e-mail is attached hereto as **Exhibit C**.

61.    On September 7, 2018, Plaintiffs' counsel sent an e-mail to Brian Brandstetter, assistant  general counsel for Wentwood, with a courtesy copy of a complaint filed the day before relating to two other projects involving Defendants and affiliates of the General Partners.  That action is captioned *Urban 8 Fox Lake Corporation, et al. v. Nationwide Affordable Housing Fund*

12

*4, LLC, et al.*, and is currently pending before Judge Thomas Durkin in the United States District Court for the Northern District of Illinois (the "Zion/Fox Lake Litigation"). A copy of Mr. Delman's July 24, 2018 e-mail was attached as an exhibit to that complaint.

62.     Mr. Brandstetter responded on September 10, 2018, informing Plaintiffs' counsel that he could accept service on behalf of all Defendants in that matter.

63.     On October 1, 2018—the day after the Option Period expired and fully aware of and knowing that Plaintiffs had exercised their respective Purchase Options—Ms. Holtz e-mailed Mr. Delman claiming that she had never received the General Partners' notices of exercise of their Purchase Options or the appraisals, and that she had never received Mr. Delman's e-mail dated July 24, 2018.

64.     Ms. Holtz claimed she first became aware of the July 24 e-mail when she reviewed the Complaint filed in the Zion/Fox Lake Litigation. A true and correct copy of Ms. Holtz's October 1, 2018 e-mail is attached hereto as **Exhibit D**.

65.     On December 17, 2018, Wentwood, on behalf of the Limited Partners, sent letters to the General Partners claiming that the General Partners had never exercised their Purchase Options and demanding that the General Partners market and sell the Projects. True and correct copies of these letters are attached hereto as **Exhibit E** and **Exhibit F**.

66.     On December 28, 2018, the General Partners, through legal counsel, responded to Mr. Brandstetter's letters, informing Wentwood and the Limited Partners that they had an obligation to inform the General Partners if the notices of exercise had not been received when they knew as of July 24, 2018, and certainly no later than September 7, 2018, that the General Partners believed they had exercised their Purchase Options and were relying upon such exercise.

US 164865685v1

67. The General Partners therefore rejected the Limited Partners' improper demand for the General Partners to market and sell the Projects. True and correct copies of these letters are attached hereto as **Exhibit G** and **Exhibit H**.

68. On January 7, 2019, Mr. Brandstetter responded to the General Partners' letters, rejecting the General Partners' position and again demanding that the Projects be marketed and sold. True and correct copies of these letters are attached hereto as **Exhibit I** and **Exhibit J**.

69. Despite being contractually required under the Partnership Agreements to sell their Partnership interests to the General Partners for a formulaic price upon the General Partners' exercise of their Purchase Options, the Limited Partners, by and through Wentwood, have unjustifiably refused to honor the General Partners' exercise of their Purchase Options by claiming that the General Partners' notices of exercise were never received.

70. Wentwood and the Limited Partners knew that the General Partners believed they had exercised their Purchase Options, and were relying upon their exercise of their Purchase Options, but either (1) contrived a story that they had never received the notices of exercise; or (2) decided to wait until the Option Period expired to notify the General Partners that the notices of exercise were purportedly not received in an attempt to deprive the General Partners of their contractual rights.

71. Upon information and belief, this course of conduct is a pattern replicated by Wentwood throughout the LIHTC industry in which it has inserted itself in recent years for the express purpose of depriving general partners or managing members from achieving the negotiated rights and benefits set-forth in their agreements with Wentwood's predecessors.

72. Wentwood is trying to, among other things, deprive the General Partners of their rights to exercise their Purchase Options in order to force sales of the Projects and attempt to garner

14

greater financial returns from the disposition of the Projects than were negotiated for by the original parties to the Partnership Agreements.

73. Wentwood has further intentionally and tortiously interfered with the Partnership Agreements by causing the Limited Partners to refuse to honor their obligations under the Partnership Agreements in an attempt to increase financial benefits for itself and/or its affiliates and to the detriment of the Limited Partners.

74. Because the Sale Preparation Fee must be allowed as a credit to the purchase price when the General Partners exercise their Purchase Options, the price to be ultimately paid to the Limited Partners upon the sale of the Limited Partners' interests pursuant to the Purchase Options, and therefore the amount to be distributed to Wentwood and/or its affiliates as agent/owner of the Limited Partners, would likely be less than the amount to be paid upon a sale of the Projects.

75. Wentwood's compensation is performance-based.

76. Wentwood is attempting to maximize its own cash payment by artificially and improperly maximizing the cash to be distributed upon disposition of the Partnerships and/or Projects in order to maximize payments to itself and/or or its affiliates, at the expense of the Limited Partners, who bargained for tax credits and tax losses when they entered the Partnerships, not for cash distributions.

77. Wentwood is doing so to the detriment of the Limited Partners, and its actions are not consistent with the conduct required by a supposed agent for an alleged principal.

78. Wentwood is not, because of its misconduct, entitled to hide behind an alleged agent/principal relationship or privilege to insulate itself from liability.

15

## LEGAL CLAIMS

### COUNT I: BREACH OF PARTNERSHIP AGREEMENTS
### (Against the ILP and SLP)

79.     Plaintiffs fully incorporate the above paragraphs by reference as if fully stated herein.

80.     The Partnership Agreements are valid and binding contracts.

81.     The Partnership Agreements include a Purchase Option, for which the General Partners provided sufficient consideration.

82.     The General Partners unconditionally exercised their Purchase Options, creating contracts for sale of the Limited Partners' interests in the Partnerships to the General Partners.

83.     The Special Limited Partner is required by each Partnership Agreement to facilitate the sale of the Limited Partners' interests upon each General Partner's exercise of its Purchase Option.

84.     The Special Limited Partner has breached its contractual obligations, including its duty of good faith and fair dealing, among other obligations, by failing to facilitate the sale of the Limited Partners' interests upon each General Partner's exercise of its Purchase Option.

85.     The Limited Partners have breached their contractual obligations, including their duties of good faith and fair dealing, to sell their interests in the Partnerships to the General Partners for the purchase price described in the Partnership Agreements by refusing to sell their interests in the Partnerships to the General Partners pursuant to the Purchase Options.

86.     The Limited Partners have breached their obligations of good faith and fair dealing by refusing to deal fairly with each General Partner in connection with its exercise of its Purchase Option by, among other things, attempting to frustrate the General Partner's exercise of its Purchase Option by concealing material information (i.e., that the Limited Partners purportedly

16

had not received the General Partners' notices of exercise of the Purchase Options, despite knowing that the General Partners believed such notices were received by the Limited Partners and that the General Partners believed they had duly exercised the Purchase Options) from the General Partners in order to try to prevent the General Partners from exercising the Purchase Options.

87.     The General Partners are entitled to, among other things, an order for specific performance requiring the Limited Partners to transfer their interests to the General Partners in accordance with the terms of the Partnership Agreements.

88.     Each General Partner is also entitled to award of damages against the Limited Partners in an amount exceeding $75,000, the precise amount to be determined at trial.

**COUNT II: DECLARATORY JUDGMENT 735 ILCS § 5/2-701**
**(Against the ILP and SLP)**

89.     Plaintiffs fully incorporate the above paragraphs by reference as if fully stated herein.

90.     An actual controversy exists as to the Limited Partners' contractual obligations to perform pursuant to the Partnership Agreements.

91.     The Partnership Agreements are valid and binding contracts.

92.     The Partnership Agreements include a Purchase Option, for which the General Partners provided sufficient consideration.

93.     Each General Partner unconditionally exercised its Purchase Option, creating a contract for sale of the Limited Partners' interests in each Partnership to the General Partner.

94.     The Special Limited Partner is required by each Partnership Agreement to facilitate the sale of the Limited Partners' interests upon each General Partner's exercise of its Purchase Option.

17

95.     The Limited Partners breached their contractual obligations, including their duty of good faith and fair dealing, to sell their interests to the General Partners by unjustifiably refusing to sell their Partnership interests pursuant to the Purchase Options as required by the Partnership Agreements.

96.     Plaintiffs are entitled to a declaration under 735 ILCS § 5/2-701 that:

　　　　　a.     Each General Partner's exercise of its Purchase Option is valid and enforceable; and

　　　　　b.     The Limited Partners must promptly transfer their Partnership interests to the General Partners pursuant to the Purchase Options in accordance with the terms of the Partnership Agreements.

## COUNT III: TORTIOUS INTERFERENCE WITH PARTNERSHIP AGREEMENTS
### (Against Wentwood)

97.     Plaintiffs fully incorporate the above paragraphs by reference as if fully stated herein.

98.     The Partnership Agreements are valid and enforceable contracts between the General Partners and the Limited Partners.

99.     Wentwood is aware of the Partnership Agreements and the Limited Partners' duties and obligations thereunder.

100.     Wentwood, as owner/agent of the Limited Partners, has a material conflict of interest in each General Partner's exercise of its Purchase Option because Wentwood stands to collect significantly more money from a sale of the Projects to a third party rather than a sale of the Limited Partners' interests pursuant to the Purchase Options, and Wentwood is attempting to maximize its financial return from the sale of the Projects solely in its own self-interest and despite such actions being contrary to the best interests of the Limited Partners.

101.     Through its ownership and/or management of the Limited Partners, Wentwood intentionally and unjustifiably caused the Limited Partners to breach the Partnership Agreements

18

by, among other things, preventing the Special Limited Partner from facilitating each General Partners' exercise of its Purchase Option, refusing to facilitate the transfer of the Limited Partners' interests to the General Partners pursuant to the Purchase Options, and actively concealing the material fact that Wentwood had purportedly not received the General Partners' notices of exercise of their Purchase Options despite knowing that the General Partners believed such notices were received by Wentwood and the Limited Partners and that the General Partners believed they had duly exercised the Purchase Options.

102.    As a result of Wentwood's tortious interference with the Partnership Agreements, the General Partners have suffered damages.

103.    Each General Partner is entitled to award of damages against Wentwood in an amount exceeding $75,000, the precise amount to be determined at trial.

**COUNT IV: FRAUDULENT CONCEALMENT**
**(Against All Defendants)**

104.    Plaintiffs fully incorporate the above paragraphs by reference as if fully stated herein.

105.    The General Partners sent notices of exercise of their Purchase Options to Wentwood, on behalf of the Limited Partners, in February 2018.

106.    On July 24, 2018, the General Partners sent an e-mail to Wentwood, as agent for the Limited Partners, inquiring regarding having received no response to their notices of exercise of their Purchase Options.

107.    On September 7, 2018, affiliates of the General Partners sent a copy of the complaint in the Zion/Fox Lake Litigation to Wentwood, which included a copy of the July 24 e-mail.

19

108.    On October 1, 2018—the day after the Option Period expired—Wentwood told the General Partners for the first time that they had purportedly not received the notices of exercise of the General Partners' Purchase Options.

109.    Wentwood and the Limited Partners fraudulently concealed the material fact that they had purportedly not received the notices of exercise of the General Partners' Purchase Options until the day after the Option Period expired.

110.    Under these circumstances, where the Limited Partners are partners in the Partnerships with the General Partners and where Wentwood and the Limited Partners had material information that they knew the General Partners did not have and that would affect the General Partners' actions, Wentwood and the Limited Partners had a duty to inform the General Partners that they had purportedly not received the notices of exercise of the General Partners' Purchase Options.

111.    Wentwood's and the Limited Partners' concealment of the information was intended to create the false belief on the part of the General Partners that Wentwood and the Limited Partners had received the General Partners' notice of exercise of their Purchase Options and that all parties agreed the General Partners had duly exercised their Purchase Options.

112.    The General Partners justifiably relied upon the silence of Wentwood and the Limited Partners as a representation that the General Partners' notices of exercise of their Purchase Options had been received by Wentwood, on behalf of the Limited Partners.

113.    The concealed information was such that had the General Partners been made aware that the Limited Partners had purportedly not received or accepted the notices of exercise of the General Partners' Purchase Options before the expiration of the Option Period, the General

Partners would have resent their notices of exercise and cured any alleged deficiency in their exercise of their Purchase Options.

114.    As a result of Wentwood's and the Limited Partners' fraudulent concealment, the General Partners have each suffered damages in an amount exceeding $75,000, the precise amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    That the Court order specific performance requiring the Limited Partners to transfer their interests to the General Partners pursuant to the Purchase Options in accordance with the terms of the Partnership Agreements.

2.    Plaintiffs are entitled to a declaration under 735 ILCS § 5/2-701 that:

   a.    Each General Partner's exercise of its Purchase Option is valid and enforceable; and

   b.    The Limited Partners must promptly transfer their Partnership interests to the General Partners pursuant to the Purchase Options in accordance with the terms of the Partnership Agreements.

3.    That the Court order such other and further relief, including, without limitation, monetary relief and attorneys' fees and costs, which the Court may deem just, equitable and appropriate under the circumstances presented.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues triable to a jury.

US 164865685v1

Dated: May 10, 2019

Respectfully submitted,

 *s/ Caitlin Martini Mika*

Caitlin Martini Mika
ARNOLD & PORTER
70 West Madison Street, Suite 4200
Chicago, Illinois 60602
Tel: (312) 583-2300
Caitlin.Mika@arnoldporter.com

-and-

David A. Davenport, #0285109
(*Pro hac vice pending*)
Christina Rieck Loukas, #0388036
(*Pro hac vice pending*)
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400
ddavenport@winthrop.com
cloukas@winthrop.com

***Attorneys for Plaintiffs***

17116640v3

22