Exhibit H



**WINTHROP & WEINSTINE**

December 28, 2018

David A. Davenport
Direct Dial: (612) 604-6716
Direct Fax: (612) 604-6816
ddavenport@winthrop.com

**VIA E-MAIL ONLY**

Brian J. Brandstetter
Assistant General Counsel
Wentwood Capital Advisors, LP
2560 River Park Drive, Ste. 320
Ft. Worth, TX 76116
bbrandstetter@wentwood.com

Re:   *Urban Danville Limited Partnership (the "Partnership")*
      *Urban 8 Danville Corporation (the "General Partner" or the "GP")*
      *Vermillion House Apartments (the "Project" or the "Property")*
      *Nationwide Affordable Housing Fund 4, LLC, formerly known as Nationwide*
      *Affordable Housing Fund IV: A Provident Tax Credit Fund, LLC (the "Fund")*
      *SCDC, LLC (the "Special Limited Partner" or the "SLP")*

Dear Mr. Brandstetter:

I write on behalf of Urban 8 Danville Corporation in response to your letter dated December 17, 2018. The Special Limited Partner's demand that the General Partner market and sell the Property is improper and is, therefore, rejected.

As you are aware, on July 24, 2018, Andrew Delman sent an e-mail to Tami Holtz of Wentwood Capital Advisors, L.P. ("Wentwood"), as managing agent for the Special Limited Partner, in which he asked for a response to the General Partner's February 2018 exercise of its purchase option pursuant to Section 6.16 of the Urban Danville Limited Partnership Agreement of Limited Partnership, dated August 15, 2013 ("LPA"). Ms. Holtz did not respond to Mr. Delman's e-mail at that time.

On September 7, 2018, a copy of the Complaint in Urban 8 Fox Lake Corporation, et al. v. Nationwide Affordable Housing Fund 4, LLC, et al., Court File No. 1:18-cv-06109 (N.D. Ill.), was provided to you. Attached to that Complaint as Exhibit D was a copy of Mr. Delman's July 24 e-mail. Nearly a month later, on October 1, 2018, Ms. Holtz sent an e-mail to Mr. Delman asserting, for the first time, that neither the General Partner's exercise of its purchase option in February 2018 nor Mr. Delman's e-mail on July 24, 2018 had been received. Neither assertion is credible.

I understand that Ms. Holtz contends she did not receive the July 24, 2018 e-mail; however, there is a legal presumption that an e-mail was received and read. *See Ball v. Kotter*, 723 F.3d 813, 831 (7th Cir. 2013). We do not believe Ms. Holtz will be able to overcome the presumption of receipt of the July 24 e-mail; however, even if Ms. Holtz could demonstrate that she did not receive the

Brian J. Brandstetter
December 28, 2018
Page 2

July 24 e-mail, there is no question that you, as counsel for the Special Limited Partner and Wentwood, received a copy of the e-mail on September 7, 2018. As you state in your letter, the Option Period did not expire until September 30, 2018. Yet, Ms. Holtz conveniently failed, until October 1, 2018–*one day after the expiration of the Option Period*—to inform the General Partner that the Special Limited Partner was taking the unsupportable and factually inaccurate position that it had not received the General Partner's exercise of its purchase option; and you, too, have remained conspicuously silent. It is also clear that Wentwood and the Special Limited Partner, through contrived supposition, intentionally, tortiously, and fraudulently concealed material information from the General Partner in order to try to prevent the General Partner from realizing its contractual rights under the LPA, and is further breaching its duty of good faith and fair dealing to the General Partner. *See W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 969 (Ill. Ct. App. 2004) ("The concealment of a material fact during a business transaction is actionable if done with the intention to deceive under circumstances creating an opportunity and duty to speak." (internal quotation marks and citation omitted)); *In re Edgewater Med. Ctr.*, 373 B.R. 845, 857 (Bankr. N.D. Ill. 2007) (finding that optionor breached duty of good faith and fair dealing by concealing information and taking actions to prevent optionee from exercising purchase option). To be clear, if Wentwood and the Special Limited Partner truly believed that the prior exercise of the option was somehow deficient or had somehow not been effected when previously provided, then it was incumbent upon them for a variety of reasons to speak up rather than "lay in the weeds" with these contrived positions.

Consistent with Mr. Delman's typical practice, Mr. Delman believes he delivered the notice of exercise of the General Partner's purchase option via certified or registered U.S. Mail, but has thus far been unable to locate the confirmation. However, whether such notice was delivered, or the means of delivery, are irrelevant at this point because (1) Wentwood and the Special Limited Partner were aware as of July 24, 2018, and (2) certainly aware no later than September 7, 2018, that the General Partner believed it had exercised its purchase option and provided the appraisal in February 2018. In addition, both prior to and following the General Partner's exercise of its purchase option, Mr. Delman engaged in communications with Ms. Holtz relating to the valuation of the Property and the expected purchase of the Investor Limited Partners' interests by the General Partner. If, as you now claim, the Special Limited Partner had not received the submission from the General Partner, Wentwood and/or the Special Limited Partner had an obligation to inform the General Partner, and had an opportunity to do so on numerous occasions, so that the General Partner could cure any alleged deficiency in the notice. By failing to inform the General Partner that the Special Limited Partner had allegedly not received the submission until after the Option Period had expired, when the Special Limited Partner knew that the General Partner believed it had exercised its purchase option and was relying on such exercise, the Special Limited Partner fraudulently concealed such information and violated its duty of good faith and fair dealing, and the Special Limited Partner will be liable to the General Partner for specific performance of the purchase option, and for any and all damages caused as a result (including attorney's fees for having to pursue such performance). Should the Special Limited Partner continue to assert that the General Partner failed to exercise its purchase option and demand that the General Partner market and sell the Property, the General Partner will not hesitate to take legal action to enforce its rights.

Brian J. Brandstetter
December 28, 2018
Page 3

Rather than engage in additional litigation, the General Partner hereby demands that the Special Limited Partner confirm that the General Partner timely exercised its purchase option under the LPA. Upon receiving this confirmation, the General Partner will promptly provide another copy of the appraisal so that the parties can complete the General Partner's purchase of the Special Limited Partner's and the Fund's Partnership assets pursuant to Section 6.16 of the LPA.

This letter is without prejudice to and does not waive any rights or remedies of the General Partner, all of which are expressly preserved.

I look forward to hearing from you.

Very truly yours,

WINTHROP & WEINSTINE, P.A.

David A. Davenport

16593662v3