Exhibit J



Brian J. Brandstetter
Assistant General Counsel
bbrandstetter@wentwood.com
Direct Dial: 817-349-7345

January 7, 2019

*VIA E-MAIL*
DDavenport@Winthrop.com

David A. Davenport, Esq.
Winthrop & Weinstine, P.A.
225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402

*Re:* *Urban Danville Limited Partnership (the "Partnership")*
*Urban 8 Danville Corporation (the "General Partner" or the "GP")*
*Vermilion House Apartments (the "Project" or the "Property")*
*Nationwide Affordable Housing Fund 4, LLC, formerly known as Nationwide*
*Affordable Housing Fund IV: A Provident Tax Credit Fund, LLC (the "Fund")*
*SCDC, LLC (the "Special Limited Partner" or the "SLP")*

Dear Mr. Davenport:

I write on behalf of the SLP and the Fund. This letter is in response to your letter dated December 28, 2018. Suffice it to say we disagree with the allegations and accusations contained therein. You take the position that the Fund and the SLP were playing some sort of game of "gotcha". Nothing is further from the truth, which is that the SLP and the Fund simply asked that what was claimed to have been sent in February of 2018 be sent again, because it was never received. Now, after multiple requests by the SLP and the Fund for the information that your client allegedly sent in February of 2018, the additional truth comes out that your client has absolutely no proof other than that he "believes" the notice was sent via certified or registered mail. Are you to have us believe that Mr. Delman didn't even retain a copy of the notice he claims was sent? According to the U.S. Postal Service website, tracking on certified and registered mail is available for two years. I would suggest that you or your client track the

David A. Davenport, Esq.
Winthrop & Weinstine, P.A.
January 7, 2019
Page 2 of 3

package you claim was sent and that you send us a full (unaltered and not cleaned or stripped) native-format copy of the original notice, so that we can confirm from the metadata that it was at least prepared at that time. If your client cannot even produce that, then you and your client should at least have the decency to admit the notice was never sent, the appraisal was never sent, and stop claiming that "believing" something was sent is the equivalent of actually sending it.

Your argument that the SLP and Fund "were aware" that the GP "believed" it had exercised the option has no merit. Even if true, that is insufficient to comply with the terms of the Urban Danville Limited Partnership Amended and Restated Agreement of Limited Partnership dated August 15, 2003, as amended (the "LPA"). Section 6.16 of the LPA specifically requires the GP to exercise the option by "delivering ... written notice of such exercise" and that the written notice, "shall specify that the Option otherwise is exercised without condition or qualification." No such written notice was delivered.

With regard to the July 24, 2018 email attached to the Complaint in *Urban 8 Fox Lake Corporation, et al. v. Nationwide Affordable Housing Fund 4, LLC, et al.*, Court File No. 1:18-cv-06109 (N.D. Ill.) (the "Fox Lake Litigation"), I would request that you produce a full (unaltered and not cleaned or stripped) copy of that email in native format so that we can determine if it was ever actually sent, when it was sent, and if it was sent to a proper email address. We also ask that you check with Mr. Delman as to whether he ever received a notification that the email, if sent, was not delivered. As previously related, the Fund and the SLP have no record of it ever being received.

The SLP and the Fund will not confirm that the GP timely exercised its purchase option under the LPA, as you demand. To date, neither you nor your client has provided even one scintilla of evidence that the required written notice was even sent, much less delivered. "Believing" a notice was delivered is a far cry from actually delivering the notice.

All of the above being said, the SLP and the Fund would be happy to entertain a purchase of their interests in the Partnership in lieu of a sale of the Property. The consideration paid for the interests would have to be agreed upon by the parties, including the determination of the Fair

David A. Davenport, Esq.
Winthrop & Weinstine, P.A.
January 7, 2019
Page 3 of 3

Market Value of the Property as an element of the value of the interests, and would have to follow the relevant terms of the LPA pursuant to Sections 6.5 (H) and 5.2 (B) of the LPA, and assuming the Partnership were wound up, dissolved, and all of its assets distributed to all of its partners. In other words, the Sale Preparation Fee would be paid in step 12 of the dispositions waterfall contained in Section 5.2 (B) of the LPA for purposes of calculating the amounts due to the SLP and the Fund for their interests in the Partnership, and not in the manner you and your client claim in the Fox Lake Litigation.

If your client would like to purchase the interests of the SLP and the Fund as set forth herein, please let me know. Otherwise, the SLP reiterates its request that the Project be marketed for sale.

Sincerely,

Brian Brandstetter

cc: Dave Sebastian, President, Wentwood Capital Advisors, LP (via e-mail)
Tami Holtz, Wentwood Capital Advisors, L.P. (via e-mail)