# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **URBAN 8 DANVILLE CORPORA-TION, and URBAN 8 MACOMB CORPORATION,** | |
| Plaintiffs, | No. 19 C 03171 |
| v. | |
| **NATIONWIDE AFFORDABLE HOUSING FUND 4, LLC, SCDC, LLC, and WENTWOOD CAPITAL ADVISORS, L.P.,** | Judge Mary M. Rowland |
| Defendants, | |

## MEMORANDUM OPINION & ORDER

Before the Court is Wentwood Capital Advisor's motion to dismiss for lack of personal jurisdiction. (Dkt. 32). For the reasons below, the Court denies Wentwood's motion [32].

## BACKGROUND

This case stems from a business dispute between Plaintiffs and Defendants, "the details of which are complicated and mostly extraneous to this opinion." *Nationwide Affordable Housing Fund 4, LLC v. Urban 8 Danville Corporation*, No. 2:19 C 1848, 2019 WL 5629930, at *1 *(S.D. Ohio Oct. 30, 2019). The facts relevant to this motion are as follows.[1]

---

[1] The parties stipulated that the Court should rule on this motion based on the briefing filed in related case *Nationwide Affordable Housing Fund 4, LLC et al v. Urban 8 Danville Corporation et al,* No. 19 C 7259. (Dkt. 91).

The Urban Danville Limited Partnership and the Urban Macomb Limited Partnership were formed for the purpose of owning and operating affordable housing developments for elderly low-income residents pursuant to the low-income housing tax credit ("LIHTC") program. 26 U.S.C. § 42. Plaintiff Urban 8 Danville Corporation is the General Partner for the Urban Danville Limited Partnership, and Plaintiff Urban 8 Macomb Corporation is the General Partner for the Urban Macomb Limited Partnership. Both General Partners are Illinois Corporations, both Limited Partnerships are Illinois limited partnerships, and each housing development is located in Illinois.

Nationwide Affordable Housing Fund 4, LLC ("Nationwide") is a limited liability company with one managing member, Wentwood. Wentwood is also the sole member in SCDC, LLC ("SCDC"). Nationwide and SCDC are Limited Partners in both Urban Limited Partnerships. Wentwood is a Texas-based limited partnership, and Nationwide and SCDC are both Ohio limited liability companies.

In addition to being the sole member of Nationwide and SCDC, Wentwood is Nationwide and SCDC's asset manager.[2] Wentwood manages Nationwide's and SCDC's investments in the Urban Limited Partnerships. According to Wentwood, it is paid on a flat-fee contractual basis, receiving $4,000 per year per investment partnership it manages. In support of this assertion, Wentwood provides a copy of its written asset management agreement with Nationwide, which describes the

---

[2] Wentwood has a written asset management agreement with Nationwide. (Dkt. 34, Ex. 2). There is no written asset management agreement between Wentwood and SCDC, and Wentwood's services to SCDC are not separately compensated. (*Id.* at ¶ 22).

referenced compensation scheme. (Dkt. 34, Ex. 2, 6). Plaintiffs contest this assertion, claiming that Wentwood's compensation is performance based. Plaintiffs rely on a picture of Wentwood's website to support the assertion that Wentwood's compensation is performance based: "Instead of charging front end fees for multi-year management obligations as most LIHTC syndicators do, our compensation is performance based, and our interests are aligned with those of our investors." (No. 19 C 7529, Dkt. 56, Ex. A, 3).[3]

The parties also dispute whether Wentwood owns any interests in the Urban Limited Partnerships. Plaintiffs claim Wentwood has ownership interests in the Urban Limited Partnerships, while Wentwood denies this. Plaintiffs point to their own Amended Counterclaims and the Wentwood website in support, while Wentwood cites to a declaration by George David Sebastian, President of Wentwood and SCDC. (Dkt. 34, ¶¶ 13-16).

It is undisputed that in its capacity as asset manager, Wentwood has communicated with Urban 8 Danville Corporation and Urban 8 Macomb Corporation via telephone and email and has even visited Illinois to meet with the two Plaintiffs. (*Id.* at ¶ 17).

---

[3] The crux of Plaintiffs' suit is that the Limited Partners and Wentwood are improperly attempting to maximize its own cash payment by failing to apply the Sale Preparation Fee to the detriment of the General Partners. The Sale Preparation Fee issue has already been decided by the Court in a related case: *Urban 8 Fox Lake Corp. et al. v. Nationwide Affordable Housing Fund 4, LLC et al*, No. 18 C 6109, 2020 WL 60209, (N.D. Ill. Jan. 6, 2020). Relevant to this motion is Plaintiffs' contention that Wentwood would benefit from the improper windfall based on their performance-based compensation scheme and ownership interests. As noted above, Wentwood contests this assertion by arguing that its compensation is based on a flat fee, such that it has no incentive to "maximize" its payment or act in its own interest. The only parties that would benefit from the Sale Preparation Fee issue—according to Wentwood—is Nationwide and SCDC.

3

The Urban Danville Limited Partnership Agreement and the Urban Macomb Limited Partnership Agreement (the "Agreements") each contain a provision (the "Option Provision") entitling the General Partners to purchase the Limited Partners' property interests upon exercise of the option during a designated period. The General Partners assert that they timely exercised their option to purchase the Limited Partners' interests. (Dkt. 1 ¶ 58; Dkt 1, Ex. C). Defendant Limited Partners disagreed and demanded the General Partners market the property for sale. (Dkt. 1; Ex. E). This lawsuit followed, along with Wentwood's motion to dismiss for lack of personal jurisdiction. (Dkt. 32). Wentwood argues that it lacks the requisite minimum contacts to satisfy personal jurisdiction, and that even if it did, any action directed at Illinois was not on its own behalf but on behalf of the Limited Partners.

## DISCUSSION

### 1. Personal Jurisdiction

A challenge to a court's exercise of personal jurisdiction over a defendant is made under Federal Rule of Civil Procedure 12(b)(2). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014)). The Illinois long-arm statute requires nothing more than the standard for federal due process: that the defendant have sufficient contact with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (quoting *Int'l Shoe Co. v.*

4

*Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Physical presence in the forum state is not required, but there must be sufficient minimum contacts such that the defendant "should reasonably anticipate being haled into court there." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) Once personal jurisdiction is challenged, plaintiff has the burden of proving personal jurisdiction.[4] *Walls v. VRE Chicago Eleven, LLC*, 344 F.Supp.3d 932, 943 (N.D. Ill. 2018) (citing *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014)).

There are two types of personal jurisdiction. General jurisdiction exists when the party's affiliations with the forum state "are so constant and pervasive as to render [it] essentially at home" there. *Daimler*, 571 U.S. 117, 122, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014). Plaintiffs have not asserted that this Court may exercise general jurisdiction over Wentwood, so this Court considers only specific jurisdiction. Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284. This type of jurisdiction requires that "(1) the defendant [ ] purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum related-activities; and (3) the

---

[4] Wentwood has requested an evidentiary hearing on personal jurisdiction. (Dkt. 33) The Seventh Circuit has instructed district courts to hold an evidentiary hearing when personal jurisdiction turns on material factual disputes. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The Court declines to hold a hearing. While there are several factual disputes, none of them are material. *See RSK Enterprises, LLC v. Comcast Spectator, L.P.*, No. 17 C 2941, 2018 WL 319318, at *5 (N.D. Ill. Jan. 8, 2018) (declining to hold evidentiary hearing where none of the disputed facts were material). Indeed, the only factual disputes involve Wentwood's compensation scheme and whether Wentwood owns interests in the Urban Limited Partnerships. Those facts are immaterial to the question of minimum contacts and so do not impact the reasoning of the Court. As there is no need for an evidentiary hearing, Wentwood's motion is denied.

exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Importantly, this inquiry must focus on the relationship between the defendant and the forum state; the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between a plaintiff (or third parties) and the forum state." *Walden*, 571 U.S. at 284 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 471 (1984)).

Where, as here, the plaintiffs' claim intentional torts, the purposeful availment inquiry focuses on whether the conduct underlying the claims was purposefully directed at the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). In such cases, courts look to the *Calder* test: whether there has been "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703 (citing *Calder v. Jones*, 465 U.S. 783, 789-90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

The first and third prongs are easily met. Plaintiffs allege that Wentwood engaged in intentional torts of fraudulent concealment and tortious interference with a partnership, satisfying the first prong of *Calder*. (Dkt. 1, 18-19). As for the third prong, the General Partners are residents of Illinois. They manage Illinois Limited Partnerships and oversee properties located in Illinois. Wentwood clearly knew that any alleged tortious conduct would harm Plaintiffs in Illinois.

6

The second prong—whether Wentwood's actions were expressly aimed at Illinois—warrants longer discussion. Wentwood first contests whether it engaged in any affirmative action at all. Wentwood notes that the General Partners' "principal claim is that [Wentwood] failed to give notice…that SCDC did not receive the [General Partners'] option-exercise notices." (Dkt. 65, 6-8). One cannot expressly aim inaction at a state, according to Wentwood. (*Id.*). Wentwood's second argument is that any action or tortious influence exerted by Wentwood on the Limited Partners occurred in Texas, not Illinois. (*Id.* at 8). As explained below, these arguments are unavailing.

Contrary to Wentwood's assertions, Wentwood has directed substantial activity at Illinois. As a threshold matter, it is clear that the alleged torts were directed at the General Partners. The allegations of tortious interference and fraudulent concealment were directly aimed at the Plaintiffs; no other party would have been harmed by Wentwood's tortious conduct. But there are other activities for the Court to consider. First, Wentwood has directed communications, including phone calls and emails, at the General Partners in Illinois. Directing communications to the forum state can form the basis for personal jurisdiction. *See Leong v. SAP America, Inc.*, 901 F.Supp.2d 1058 (N.D. Ill. 2012). "The Seventh Circuit has explained… that emails may be properly considered in minimum contact analyses, especially if they were purposefully sent to a forum resident knowing that they would be read in the forum." *Levin v. Posen Foundation*, 62 F.Supp.3d 733, 740 (N.D. Ill. 2014) (citing *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012); *see also Triad Capital Mgmt. LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2008 WL 4104357, at *5 (N.D. Ill. Aug. 25, 2008)

7

("[E]ven when contact takes place only via telephone or email, it can create a substantial connection between the defendant and the forum state"). This is especially so when the communications occur over several months, such that the communications are "not random, fortuitous, or attenuated." *Mid-Am. Tablewares v. Mogi Trading, Co.*, 100 F.3d 1353, 1361 (7th Cir. 1996). Here, both Wentwood and the General Partners provide evidence of repeated communications sent by Wentwood to the Illinois-based General Partners over many months and years. (Sebastian Decl., Dkt. 34 ¶ 17; Case No. 19 C 7259, Dkt. 58 ¶ 6).

Second, Wentwood was physically present in Illinois. Neither party provides arguments regarding Wentwood's physical presence in the state, despite the fact that Wentwood "visited Illinois in Wentwood Capital Advisors' capacity as an agent for Nationwide and SCDC." (Sebastian Decl., Dkt. 34 ¶ 17). Of course, physical presence in Illinois is neither necessary nor sufficient to subject a nonresident to personal jurisdiction *Wisc. Elec. Mfg. Co. v. Pennant Prods., Inc.*, 619 F.2d 676, 678 fn. 6 & 8 (7th Cir. 1980). But here, Wentwood's physical presence in Illinois satisfies personal jurisdiction given that Wentwood traveled to Illinois to physically meet with the General Partners in a business capacity. *Compare Abbott Labs., Inc. v. Biovalve Techs., Inc.*, 543 F.Supp.2d 913, 921-24 (N.D. Ill. 2008) (finding personal jurisdiction based on the defendant's physical presence in the state for two substantive meetings directly related to performance under the parties' contract) *with Maurice Strenberg, Inc. v. James*, 577 F.Supp. 882, 885 (N.D. Ill. 1984) (no personal jurisdiction where defendant entered the forum state on two occasions for reasons wholly unrelated to

8

the plaintiff or the dispute). Wentwood's physical presence to meet with the Plaintiffs regarding the Limited Partnerships thus establishes sufficient contact with Illinois.

Ultimately, Wentwood managed the Limited Partners' interests in the limited partnerships regarding Illinois properties,[5] and directed allegedly tortious conduct at Illinois Plaintiffs. Coupled with Wentwood's consistent correspondence with Illinois Plaintiffs and physical presence, this record demonstrates sufficient contact with the forum state. The fact that some of Wentwood's tortious conduct occurred in Texas does not diminish Wentwood's contacts with Illinois. *See Tamburo*, 601 F.3d at 706. ("[A]lthough they acted from points outside the forum state, these defendants specifically aimed their tortious conduct at [the plaintiff] and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there"). It is not unreasonable to expect Wentwood to defend its alleged fraud in Illinois, given that the subject of the transaction (the properties and investment) is in Illinois and that Wentwood repeatedly directed conduct and communications here.

Exercising specific jurisdiction over Wentwood also comports with traditional notions of fair play and substantial justice. The following factors are relevant: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the

---

[5] Wentwood impresses upon the Court the difference between managing properties and managing the Limited Partners' interests in the Limited Partnerships. The Court understands that Wentwood does not, in fact, manage the Illinois properties. (Dkt. 65, 6, fn. 6).

9

shared interest of several States in furthering fundamental substantive social policies." *Tamburo*, 601 F.3d at 709; *see also Walls*, 344 F.3d at 945.

First, Illinois has an interest in providing a forum to seek redress for the alleged fraud inflicted by out-of-state actors on Illinois Plaintiffs. The investment properties at issue are also located in Illinois and serve Illinois residents. Further, it would be unreasonable to expect Plaintiffs to file separate lawsuits to allow each defendant (residents of Texas and Ohio) who allegedly participated in the tortious conduct the privilege of defending this litigation in their home state when jurisdiction is otherwise proper in Illinois. That would be cumbersome and impractical, particularly when those states do not have any substantial interest in having the litigation in that state. Additionally, there is already one related case before this Court involving the same parties, the same contractual terms, but different properties. *Urban 8 Fox Lake Corp et al. v. Nationwide Affordable Housing Fund 4, et al.*, Case No. 18 C 6109.[6] This Court has already invested great effort and time in understanding the complicated transactions at issue in the Fox Lake case as well as this case. Maintaining this suit thus promotes the most efficient resolution of Plaintiffs' claims. *See Tamburo*, 601 F.3d at 710. Finally, the burden on the defendant is minimal since Wentwood already has to defend very similar claims in the Fox Lake case in this Court.

---

[6] In the related case, the Court found personal jurisdiction over Wentwood (No. 18 C 6109, Dkt. 51). That decision was largely based on a settlement agreement between those Urban 8 Plaintiffs and Wentwood. The settlement agreement is governed by Illinois law, and provides for jurisdiction and venue in Illinois. (*Id.*). That agreement is not relevant here and the Court need not and does not rely on it.

10

A finding that Wentwood is not subject to personal jurisdiction in Illinois would create significant barriers to the effective relief for Plaintiffs. Under these circumstances, it is far more reasonable to conclude that Wentwood should anticipate being haled into court in Illinois rather than a court with little relation to the scheme, the transaction, or the properties. The exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, such that jurisdiction over Wentwood is proper.

## 2. Fiduciary Shield Doctrine

Wentwood argues that even if personal jurisdiction would otherwise exist, the "fiduciary shield doctrine" negates jurisdiction because Wentwood acted only as an agent of Nationwide and SCDC, not in its own capacity or on its own behalf. Illinois recognizes a fiduciary shield that "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994); *see also Leong v. SAP America, Inc.*, 901 F.Supp.2d 1058, 1064 (N.D. Ill. 2012). The Illinois Supreme Court has explained that where an individual defendant's conduct "was a product of, and was motivated by, his employment situation and not his personal interests…it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *United Fin. Mortg. v. Bayshores Funding Corp.*, 245 F.Supp.2d 884, 894 (N.D. Ill. 2002) (citing *Rollins v. Ellwood*, 141 Ill.2d 244, 280, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1318 (1990)). "Application of this doctrine is discretionary, however, so even if its criteria are satisfied, it does not bar

11

the exercise of personal jurisdiction by Illinois courts." *Leong*, 901 F.Supp.2d at 1064 (citing *Rice*, 38 F.3d at 914). In addition, there are two exceptions to the fiduciary shield doctrine: (1) the individual acted on personal interest or (2) the individual's actions were discretionary. *Id.*; *see also Levin v. Posen Foundation*, 62 F.Supp.3d 733, 741 (N.D. Ill. 2014).

Wentwood asserts it is protected by the fiduciary shield doctrine. It argues that all of its conduct, visits, and communications were done on behalf of its principals, Nationwide and SCDC. Plaintiffs argue that Wentwood falls into both exceptions. The parties' dispute over Wentwood's compensation scheme and ownership interest go to the first exception—whether Wentwood was acting in its personal interests or had anything to gain from its tortious conduct.

But the Court need not address the first exception, as it rests its decision on the second.[7] Courts generally have refused to apply the fiduciary shield doctrine to parties who are sued based on discretionary acts. *Sommese v. American Bank and Trust Co., N.A.*, No. 11 C 2827, 2012 WL 3006824, at *4 (N.D. Ill. July 23, 2012) (quoting *Jones v. Sabis Educ. Sys., Inc.*, 52 F.Supp.2d 868, 883 (N.D. Ill. 1999)) ("The shield generally should not apply where the 'employee has the power to decide what is to be done and chooses to commit the acts that subject him to [jurisdiction].'"); *see, for example, Farmer v. DirectSat USA, LLC*, No. 8 C 3962, 2010 WL 380697, at *3-4 (N.D. Ill. Jan. 28, 2010) (allegations that defendants had the ability to hire and fire

---

[7] As stated *supra* at footnote 4, the fact disputes about Wentwood's compensation package are not material to the Court's determination regarding the fiduciary shield doctrine. Therefore, the Court does not find it necessary to hold a hearing on this matter.

employees, direct and supervise the work of the employees, and make decisions regarding wage and hour classifications and employee compensation were sufficient to deprive them of the fiduciary shield); *Leong*, 901 F.Supp.2d at 1065 (holding that the fiduciary shield doctrine did not apply because defendant had discretion over the allegedly unlawful actions).

As asset manager for Nationwide and SCDC, Wentwood has discretion in how it manages the Limited Partners' interests. Indeed, Wentwood admits that it has "discretion in how it manages the [Limited Partners'] partnership interests," but maintains that it did not exercise discretion "in any of the matters that are before the Court in this action." (No. 19 C 7259, Dkt. 65, 14). The Court disagrees. As asset manager, Wentwood clearly exercised discretion in how it communicated with Plaintiffs and in meeting with Plaintiffs in Illinois. Further, accepting as true the allegations that Wentwood engaged in the alleged tortious interference, it exercised discretion by: (1) refusing to facilitate the transfer of the Limited Partners' interests to the General Partners; and (2) actively concealing the fact that it had received the General Partners' notices of exercise of their Purchase Options. This exercise of discretion in its management of the Limited Partners' investment defeats the fiduciary shield doctrine. Wentwood's actions were sufficiently discretionary to meet the fiduciary shield doctrine's exception.

One final note, in deciding whether to apply the fiduciary shield doctrine, courts have focused on the key language of *Rollins* that "[j]urisdiction is to be asserted only when it is fair and reasonable to require a non-resident defendant to defend an

13

action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Brujis v. Shaw*, 876 F.Supp. 975, 979 (N.D. Ill. 1995) (quoting *Rollins*, 152 Ill.Dec. 384, 565 N.E.2d at 1315); *see also Minemyer v. R-BOC Reps., Inc.*, No. 7 C 1763, 2007 WL 2461666, at *4 (N.D. Ill. Aug. 24, 2007) (in applying the doctrine, courts "must also consider, based on equitable principles, whether the factual scenario in its entirety warrants application of the shield against personal jurisdiction"). Based on the record before the Court, the substantial contacts Wentwood had with Illinois, and Illinois' interest in adjudicating this dispute, including Wentwood's alleged role in it, the Court declines to apply the fiduciary shield doctrine.

## CONCLUSION

For the reasons stated herein, Wentwood's motion to dismiss for lack of personal jurisdiction [32] is denied.

E N T E R:

Dated: June 9, 2020

MARY M. ROWLAND
United States District Judge