UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| URBAN 8 DANVILLE CORP., *et al.* ) | |
| ) | Case No. 19-cv-03171 |
| Plaintiffs, ) | |
| ) | District Judge Mary M. Rowland |
| v. ) | |
| ) | Magistrate Judge Jeffrey Cole |
| ) | |
| NATIONWIDE AFFORDABLE ) | |
| HOUSING FUND 4, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Nationwide Affordable Housing Fund 4, LLC ("Nationwide 4"), SCDC, LLC ("SCDC") (together the "Limited Partners"), and Wentwood Capital Advisors, L.P. ("Wentwood Capital"), by and through their undersigned counsel, hereby submit the following Statement of Undisputed Material Facts pursuant to Local Rule 56.1 and in support of their Motion for Summary Judgment.

**I.   Jurisdiction and Venue**

1. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Dkt. 57, Answer at ¶33.

2. Venue in this Court is appropriate, by virtue of a contractual agreement between the Limited Partners and the plaintiffs in this action. *Id.* at ¶34.

**II.   The Parties**

3. This case arises out of two Illinois limited partnerships formed pursuant to the

federal Low Income Housing Tax Credit program to develop Low Income Housing Tax Credit properties in Danville and Macomb, Illinois. *Id.* at ¶¶ 1-2, 5-6, 37, 49-50.

4. The Federal Low Income Housing Tax Credit program is a federal program administered by state and local housing agencies designed to promote the development of housing for individuals and families of low to moderate income pursuant to Section 42 of the Internal Revenue Code and regulations thereunder. *Id.* at ¶¶ 37-38.

5. The Urban Danville Limited Partnership was formed in 2000. It owns and operates a 160-unit Low Income Housing Tax Credit development known as the Vermilion House Apartments in Danville, Illinois. *Id.* at ¶¶1-2.

6. The Urban Macomb Limited Partnership was formed in 2000. It owns and operates a 115-unit Low Income Housing Tax Credit development known as the Jefferson House Apartments in Macomb, Illinois. *Id.* at ¶¶5-6.

7. Urban 8 Danville Corporation is the General Partner of the Danville Limited Partnership. *Id.* at ¶4. Urban 8 Macomb Corporation is the General Partner of the Macomb Limited Partnership. *Id.* at ¶8.

8. The sole officer, principal, and employee of both General Partners is Andrew Delman. Ex. A, Excerpts from Deposition of Andrew Delman ("Delman Dep.") at 14:2-15:21. Mr. Delman conducts all activities on behalf of the General Partners and has no staff or employees who assist him. *Id.*

9. Mr. Delman agrees the General Partners owe duties of honesty and candor to the Limited Partners. Ex. A, Delman Dep. at 22:1-20.

10. Defendant Nationwide 4 is the current Investor Limited Partner of both Limited Partnerships. Dkt. 57 at ¶10.

11. Defendant SCDC is the current special limited partner of both Limited Partnerships.

2

*Id.* at ¶11.

12. Defendant Wentwood Capital is the asset manager for both Nationwide 4 and SCDC. *Id.* at ¶12. In this role, Wentwood Capital provides asset-management services for the Limited Partners. *Id.*

### III. The Limited Partnership Agreements

13. The Danville Partnership is governed by an Amended and Restated Agreement of Limited Partnership, dated August 15, 2003 ("Danville Limited Partnership Agreement"). Dkt. 57 at ¶3.

14. The Macomb Partnership is governed by an Amended and Restated Agreement of Limited Partnership, also dated August 15, 2003 ("Macomb Limited Partnership Agreement" and, together with Danville Partnership Agreement, the "Limited Partnership Agreements"). *Id.* at ¶7.

15. The Limited Partnership Agreements grant the General Partners an option to purchase the Limited Partners' interests in the Limited Partnerships after the end of the Low Income Housing Tax Credit initial compliance period ("Options"). Ex. B, Danville Limited Partnership Agreement, §6.16 and Ex. C, Macomb Limited Partnership Agreement, §6.16. The pertinent language of both Limited Partnership Agreements is identical.

16. Section 6.16 of the Limited Partnership Agreements, titled "Option to Acquire Interest of Limited Partners," states as follows:

> Subject to any required Consent or approval of the Lenders, HUD and/or the Credit Agency, the General Partners shall have the option to purchase the Interest of the Investor Limited Partner, Special Limited Partner and any Additional Limited Partner admitted to the Partnership pursuant to Section 4.2A(7) (the "Option") at any time during the period beginning with the expiration of the Compliance Period and ending on the date which is nine (9) months after the expiration of the Compliance Period (the "Option Period"), on the terms and conditions set forth in Section 6.16. The General Partners shall exercise the Option, if at all, by **delivering** to such Limited Partners at any time during the period beginning ninety (90) days prior to the expiration of the Compliance Period and ending on the expiration of the Option period, **written notice** of such exercise; **such notice of exercise shall specify**

3

> **that the Option otherwise is exercised without condition or qualification**, subject to the determination of the purchase price in accordance with this Section 6.16.

Ex. B, Danville Limited Partnership Agreement, §6.16 and Ex. C, Macomb Limited Partnership Agreement, §6.16 (emphasis added).

17. The Credit Agency is defined as the Illinois Housing Development Authority. Ex. B at p. 54; Ex. C at p. 54.

18. The Compliance Period for both Limited Partnerships ended on December 31, 2017. Therefore, the period within which the General Partners could exercise their Options if they chose to do so commenced on October 1, 2017 and expired on September 30, 2018 (the "Exercise Period"). Dkt. 57 at ¶¶56-57.

19. To exercise the Options, the General Partners were required to deliver unconditional, unqualified written notices of exercise to the Limited Partners any time during the Exercise Period. Ex. A, Delman Dep. at 54:10 – 55:11.

## IV. The General Partners Falsely Claim to Have Exercised the Options in February 2018

20. The General Partners alleged in their Complaint they sent a notice of exercise of the Options to Defendants in February 2018 (the "February Notices"). Dkt. 1, at ¶¶60, 105. No copy of the alleged February Notices was attached to their Complaint.

21. The General Partners swore in interrogatory responses signed by Mr. Delman that they sent notices of exercise to the Defendants in February 2018. Specifically – in an answer verified by Mr. Delman – the General Partners stated "Plaintiffs respond that in February 2018, Plaintiffs sent a notice of exercise of the Purchase Options, along with the required appraisals, through the United States mail by either Certified or Registered Mail." Ex. D, Plaintiffs' Answers to Defendants Nationwide Affordable Housing Fund 4, LLC and SCDC, LLC's First Set of Interrogatories, at ¶4.

22. The General Partners further alleged that they followed up on the February Notices

4

by a July 24, 2018 email ("July Email") that Mr. Delman wrote to Tami Holtz of Wentwood Capital. Dkt. 1, at ¶60 and Dkt. 1-5. The July Email contained a subject line related to two other properties, not either the Vermilion (Danville) or Jefferson House (Macomb) properties. *Id.*

23. At all relevant times, Ms. Holtz was the day-to-day contact person for the Defendants. Ex. E, Excerpt from Deposition of. G. David Sebastian, 61:2-13; 61:18-62:2.

24. Ms. Holtz first learned of the General Partners' claims of sending the February Notices and the July Email on September 27, 2018 when she first saw the July Email attached as an exhibit to a complaint related to a different litigation matter involving two different properties (on page 217 of a 227-page filing). Dkt. 35, at ¶11; *see also* Ex. F, Excerpt from Deposition of Tami Holtz ("Holtz Dep.") at 191:18 – 192:21; 195:16-22.

25. The July Email and its mention of the Jefferson and Vermilion properties was so hidden in that 227-page complaint that even Mr. Delman had difficulty locating it when he was asked to do so during his deposition. Ex. A, Delman Dep. at 156:1-14; 158:4-10.

26. On October 1, 2018, Ms. Holtz emailed Mr. Delman. Ex. G, AMTX-DM000954. After noting that she did not receive the February Notices or the July Email, she asked Mr. Delman as a business matter to re-send her the notices of exercise which the General Partners allegedly sent. Specifically, on October 1, 2018, Ms. Holtz wrote to Mr. Delman that she "ha[d] no record of receiving" the February Notices and asked Mr. Delman to "please re-send those submissions to me via email …." *Id.*

27. The General Partners did not provide the alleged February Notices in response. Ex. F, Holtz Dep. at 221:12-18; 229:19-20; *see also* Dkt. 35 at ¶¶13-14.

28. Mr. Delman did not provide Ms. Holtz the requested documentation, even though he admits that her request was "simple". Ex. A, Delman Dep. at 159:9-164:8. Instead, he turned the matter over to counsel:

5

> Q: Would there have been any harm in you sending another copy of what you believed you had previously sent to Tami in response to her request?
> A: May have been.
>
> * * *
>
> Q: What would the harm have been in simply resending what you believed you had already sent?
> A: I -- I stood on what I did. I was not going to send her any additional information at this point. I was already -- I was already talking to counsel.

*Id.* at 164:9-165:10. "At this point" as referenced by Mr. Delman was a mere one day after the end of the Exercise Period.

29. Thereafter, outside counsel for the Defendants, Marc Al, contacted counsel for the General Partners, David Davenport and Christina Rieck Loukas, and asked whether they would "be able to forward or cause to be forwarded to me by your client a complete copy of the ... alleged February 2018 purchase option-exercise- notices." Ex. H, AMTX-DM001423-25.

30. Counsel for the General Partners never provided the alleged February Notices in response to this simple request.

31. On November 8, 2018, Mr. Al emailed counsel for the General Partners again and again requested "a copy of the alleged February 2018 purchase-option notices and appraisals." Dkt. 57-6.

32. The General Partner's counsel did not send the alleged February Notices. Instead, counsel for the General Partners continued to keep the Defendants in the dark and merely wrote back that their concerns "will be addressed in due course." *Id.*

33. In addition to the foregoing communications, Mr. Brandstetter, Assistant General Counsel for Wentwood Capital, also sent correspondence to counsel for the General Partners seeking additional information regarding the alleged February Notices. On December 17, 2018, Mr. Brandstetter wrote that the General Partners still had not produced a copy of the alleged February Notices, although numerous requests had been made over the prior months. Ex. I, AMTX-

6

DM001630-36.

34. In response to Mr. Brandstetter's letter of December 17, 2018, the General Partners stated:

> Consistent with Mr. Delman's typical practice, Mr. Delman believes he delivered the notice of exercise of the General Partner's purchase option via certified or registered U.S. Mail, but has thus far been unable to locate the confirmation.

Ex. J, AMTX-DM004460-67.

35. In response, Mr. Brandstetter sent another communication to the General Partners' counsel on January 7, 2019 in which he requested that the General Partners produce "a full (unaltered and not cleaned or stripped) native-format copy of the original notice" so that Defendants could "confirm from the metadata that it was at least prepared" around February, 2018. Ex. K, AMTX-DM002357-63.

36. The General Partners did not produce the material requested.

37. The General Partners failed to produce the February Notices in the ordinary course of business despite numerous requests. Ex. A, Delman Dep. at 169:20-170:5. None of the requests by Defendants or their counsel indicated that the notices would not be honored if provided.

38. It became clear to Defendants that the February Notices were never sent. Ex. F, Holtz Dep. at 229:5-230:10.

39. During discovery, Defendants again attempted to determine whether the General Partners prepared or sent the alleged February Notices. Specifically, Defendants sought:

> The February 2018 notice the Danville/Macomb Plaintiffs claimed to have sent to any of the Defendants indicating that the Danville/Macomb Plaintiffs exercised their rights under the Purchase Option (the "February 2018 Notice").

Defendants sought it "in native form so that the metadata related to the notice can be ascertained. *See* Ex. L, First Set of Requests for Production of Documents of Defendants Nationwide Affordable Housing Fund 4, LLC and SCDC, LLC, Req. No. 4.

7

40. In response, the General Partners answered "Plaintiffs do not possess a copy of the notice that was sent." Ex. M, Plaintiffs' Responses to Defendants Nationwide Affordable Housing Fund 4, LLC and SCDC, LLC's First Set of Requests for Production of Documents, Req. No. 4.

41. However, Mr. Delman swore he caused the notices to be sent by registered or certified mail along with the "required appraisals." Ex. D, Plaintiffs' Answers to Defendants Nationwide Affordable Housing Fund 4, LLC and SCDC LLC's First Set of Interrogatories, at ¶4.

42. During his deposition on September 24, 2020, Mr. Delman initially testified consistent with his written discovery responses that he exercised the purchase options in February 2018:

> Q: And do you understand those allegations involve an alleged February [2018] notice to exercise a purchase option under the Danville and Macomb limited partnership agreements; is that correct?
> A: I don't think it's alleged.
> Q: That's what the allegation is; is that correct?
> A: I don't think it's alleged. It is.

Ex. A, Delman Dep. at 10:12-20.

43. Mr. Delman testified that he prepared the alleged notices of exercise on a computer, not on a typewriter, and that he did not handwrite the notices. Ex. A, Delman Dep. at 36:7-37:8. Mr. Delman testified that, as of February 2018, he utilized two computers to perform work-related tasks, but that he threw one away and there is no electronic footprint on the other that the February Notices were ever created. *Id.* at 38:10-41:10.

44. Plaintiffs do not have the February Notices. Defendants do not have the February Notices. No February Notices were produced in discovery. No February Notices exist in this case. Yet Mr. Delman and his counsel never informed the Defendants that there were no February Notices or that Plaintiffs were mistaken in their belief the notices had been sent.

V.   **The General Partners Failed to Issue Any Notices, Let Alone the Alleged February Notices**

45. Later in his deposition, Mr. Delman disavowed that any February Notices existed. After swearing in Plaintiffs' July 2020 interrogatory responses that he could not locate a copy of the notices of exercise, Mr. Delman testified that "[i]t's in the discovery we've produced." Ex. A, Delman Dep. 11:2-9.

46. When asked what documents constituted the notices of exercise, Mr. Delman responded that the December 28, 2017 letters constituted the notices of exercise:

> Q: And you now have in front of you a document we've marked as Exhibit No. 5, which is a December 28, 2017, letter.
> A: I do.
> Q: You have that?
> A: I do.
> Q: Are you familiar with this?
> A: I am.
> Q: Is this the document that you've been referring to as the notice of exercise of option?
> A: I do. I am. I do, yes.
> Q: The answer is yes?
> A: Yes.

*Id.* at 117:8-20. In other words, after previously asserting and swearing the General Partners issued their notices of exercise in February 2018, Mr. Delman switched positions, instead swearing that the notices of exercise were actually a pair of December 28, 2017 letters.

47. The (unsigned) December 28, 2017 letters were produced in discovery by the Plaintiffs during the mandatory initial disclosure phase of this case, approximately a year before Mr. Delman's July 2020 sworn interrogatory statement that he could not locate copies.

48. Defendants did not receive the December 28, 2017 letters at any time other than as part of Plaintiffs' document production in this case. Ex. F, Holtz Dep. at 229:5-230:10.

49. Mr. Delman testified that he drafted the letters using a prior letter drafted by his attorney as a template. Ex. A, Delman Dep. 119:21-120:13. Plaintiffs produced no metadata showing

9

when these letters were created.

50. The December 28, 2017 letters state that the General Partners were "considering" exercising the Option to purchase the limited partner interests of the respective partnerships and that the General Partners had not yet made a final determination as to whether to exercise their Options:

> The undersigned is **considering** the exercise of its Option, i.e. to purchase the interest of the Investor Limited Partner et al. as provided under Section 6.16 of the Limited Partnership Agreement. In accordance with that section we are seeking the determination of the Fair Market Value of the Property **prior to our making a final decision to exercise the Option**. . . . As set forth in Section 6.16, the fees of the appraisers shall be a Partnership expense **unless we exercise the Option**. . . .

Ex. N, Delman Dep. Ex. 5, at Urban011354 and Urban011356.

51. These letters were not accompanied by the "required appraisals" that Mr. Delman had previously testified were included with the notices of exercise. Instead, these letters contain an engagement letter for appraisals to be commissioned, thereby conclusively demonstrating that no appraisals could have been sent at that time because they had not yet been prepared. Ex. N at Urban011358-63 and Urban0113564-69; *see also* Ex. A, Delman Dep. at 43:16-44:21.

### VI. The Purported Notices Were Never Sent or Delivered

52. The General Partners have failed to produce documentation supporting their claims that either the letters from December 28, 2017 or the alleged February Notices were sent or delivered to Defendants.

53. Section 6.16 of the Limited Partnership Agreements requires that the notices of exercise be "delivered", not merely that they be sent.

54. The general partners chose their method of delivery – registered or certified mail. Ex. D, Plaintiffs' Answers to Defendants Nationwide Affordable Housing Fund 4, LLC and SCDC, LLC's First Set of Interrogatories, at ¶4.

55. Mr. Delman did not testify that he sent the notices by both regular U.S. Mail and registered or certified mail – only that he was certain that he sent them by registered or certified mail. Ex. A, Delman Dep. 42:2-4; 193:20-194:13. Despite this certainty, Mr. Delman could not even identify the date the phantom February Notices were sent. Ex. A, Delman Dep. 13:7-10.

56. Mr. Delman did not have any established protocols or procedures to mail out notices related to the exercise of purchase options. He did not utilize any staff to perform his mailings nor did he have a set schedule as to when mailings would be performed. *Id.* at 46:18-47:10; 193:23 – 194:15.

57. He could not recall where, or from what post office, he allegedly mailed the notices. *Id.* at 42:5-7; 43:10-13. He later contradicted that testimony by swearing that he mailed them from the Deerfield Illinois Post office. *Id.* at 193:18-194:22.

58. He could not recall the type of envelope he utilized to allegedly mail the notices or whether he paid postage for the mailing. *Id.* at 45:5-14; 46:3-4.

59. There is no evidence in the record that these letters or the alleged February Notices were sent by any means (email, mail, registered or certified mail, fax, or personal delivery) to Defendants.

60. Despite the General Partners' position that the notice of exercise was delivered to Defendants via certified or registered mail, the General Partners have failed to produce any registered or certified mail receipt, tracking information or any other evidence supporting this method of transmission or confirmation of delivery. Ex. M, Plaintiffs' Responses to Defendants Nationwide Affordable Housing Fund 4, LLC and SCDC, LLC's First Set of Requests for Production of Documents, Responses to Req. Nos. 5 and 6.

61. Similarly, the General Partners have not produced any evidence that the December 28, 2017 letters were mailed via certified or registered mail despite Defendants' specific request. Ex.

11

Q, September 28, 2020 Letter to Counsel for General Partners.

62. As provided by the U.S. Post Office, "Certified Mail provides the sender with a mailing receipt and electronic verification that an article was delivered or that a delivery attempt was made" (https://faq.usps.com/s/article/What-is-Certified-Mail) and Registered Mail "[r]equires a signature upon delivery" and "[d]elivery information provides delivery status or attempted delivery status when the item reaches its destination" (https://faq.usps.com/s/article/What-is-Registered-Mail).

63. Prior to the inception of the present lawsuit, Mr. Brandstetter informed the General Partners of the following:

> Now, after multiple requests by the [Defendants] for the information that your client allegedly sent in February of 2018, the additional truth comes out that your client has absolutely no proof other than that he "believes" the notice was sent via certified or registered mail. Are you to have us believe that Mr. Delman didn't even retain a copy of the notice he claims was sent[?] According to the U.S. Postal Service website, tracking on certified and registered mail is available for two years. I would suggest that you or your client track the package you claim was sent ....

Ex. K at AMTX-DM002358-59 and AMTX-DM002361-62.

64. Mr. Delman failed to inquire at the post office for any tracking information for the notices. Ex. A, Delman Dep. at 194:16-22.

### VII. The General Partners Did Not Comply with the Notice Provision

65. Section 10.2 requires that a copy of any notice of exercise be sent to specific entities and individuals, including SCDC, Michael D. Saad, and Michael D. Yura. Ex. B, Danville Limited Partnership Agreement, §10.2 and Ex. C, Macomb Limited Partnership Agreement, §10.2.

66. Michael D. Saad, Esq. did not receive and does not have a copy of the phantom notices. Ex. O, Responses of Non-Parties Michael D. Saad and Squire Patton Boggs' (US) LLP to Subpoena *Duces Tecum* Issued September 22, 2020.

67. Mark D. Yura, Esq. did not receive and does not have a copy of the phantom notices

or the December 28, 2017 letters. Ex. P, Declaration of Mark S. Gurley, Director of Operations for the Office of General Counsel for DLA Piper LLP (US), made in response to Subpoena issued September 8, 2020.

68. In addition to being a notice recipient under the Limited Partnership Agreements, Mr. Yura was listed on the unsigned December 28, 2017 letters as a cc recipient of those letters. Ex. N, Urban011355 and Urban011357.

### VIII. The General Partners' Subsequent Conduct is Not Consistent with Notice of Exercise Having Been Sent or Delivered

69. The General Partners' post-December, 2017 conduct provides no support for notices of exercise having been sent or delivered. The General Partners never confirmed the Defendants received the alleged notices. Ex. A, Delman Dep. at 194:16-195:17, 207:2-7.

70. The General Partners failed to make any written demand for closing, failed to demand a closing date, failed to deliver any closing documents, and failed to negotiate or agree on a price. *Id.* at 93:11-16, 207:2-211:20.

71. The General Partners failed to investigate or inquire whether the third-party consents required as conditions precedent to closing under Section 6.16 would be granted (the United States Department of Housing and Urban Development ("HUD"), the Illinois Housing Development Authority or the Partnerships' mortgage lenders).[1] *Id.* at 93:6-10.

72. Despite that the Limited Partnership Agreements required payment in cash, the General Partners had no cash on hand to purchase the Limited Partners' interests. *Id.* at 211:18-20.

---

[1] Whether any of these consents would have been forthcoming is doubtful: In 2016, the Cook County Circuit Court entered judgment in a matter involving other Low Income Housing Tax Credit properties subject to federal Housing Assistance Payments ("HAP") Contracts issued by HUD. The court found that Mr. Delman had breached his fiduciary duties to his partners and ordered restitution including interest of approximately $2.5 million. *See* Ex. R, *Conant et al. v. Delman et al.*, 13 CH 15361, Mem. Op. and Order Jan. 29, 2016 (Larsen, J.).

DATED: November 10, 2020          **NIXON PEABODY LLP**

*/s/ Laura B. Bacon*

Laura B. Bacon
70 W. Madison Street, Suite 3500
Chicago, IL 60602-4224
(312) 977-4400
(844) 552-3035 (fax)
lbbacon@nixonpeabody.com

Louis E. Dolan, Jr. (admitted *pro hac vice*)
799 Ninth Street, N.W., Suite 500
Washington, D.C. 20001-4501
(202) 585-8000
(202) 585-8080 (fax)
ldolan@nixonpeabody.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Laura B. Bacon, an attorney, certify that on November 10, 2020, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send electronic notification to all parties through their registered attorneys of record that this document has been filed and is available for viewing and download.

/s/ *Laura B. Bacon*